UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**RAMZY SUHWEIL,**

        **Plaintiff,**

v.                            Case No: 6:20-cv-1205-RBD-EJK

**PN MEDICAL, INC. and MARK CARBONE,**

        **Defendants.**

### REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Renewed Joint Motion for Approval of FLSA Settlement (the "Motion"), filed October 20, 2021. (Doc. 39.) Upon consideration, I respectfully recommend that the Motion be granted.

### I.   BACKGROUND

On July 7, 2020, Plaintiff instituted this action against PN Medical, Inc. ("PN") and its Chief Executive Officer, Mark Carbone (collectively, "Defendants"), alleging violations of the overtime wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and breach of contract. (Doc. 1.) Plaintiff alleges that he worked as a consultant for Defendant PN beginning in August 2017 and later became its Chief Operating Officer ("COO") in 2018. (*Id.* at 2.) Thereafter, Plaintiff resumed his role as a consultant with Defendant in June 2019. (*Id.*) Plaintiff asserts he is not an exempt employee because Defendants failed to properly pay his salary, thus destroying the salary-basis test for exemption from the FLSA. (*Id.* at 3.) Plaintiff asserts he regularly

worked in excess of 40 hours per week and that Defendant PN failed to pay him overtime. (*Id.* at 3–4.) Plaintiff also asserts that Defendant PN failed to compensate him for his work as COO from February 2018 through May 2019 and for his work as a consultant from June 2019 through the filing of this lawsuit. (*Id.* at 5.) Defendants responded to the Complaint, denying all claims. (Doc. 16.)

Plaintiff is also a Trustee of Roserie Saif Trust, which is a shareholder of Defendant PN, and he subsequently filed a separate action against Defendant PN in the Circuit Court of the Eighteenth Judicial Circuit, in and for Brevard County, Florida. (Doc. 33 at 2.) Additionally, Plaintiff, as Trustee, made a demand on Defendant PN by letter for "rescission of the Trustee's purchase of stock in PN Medical." (*Id.*)

Accordingly, the parties entered global mediation on March 24, 2021, to resolve the pending lawsuits and stock recission demand. (*Id.* at 2-3.) The parties successfully settled after negotiating a compromise of Plaintiff's claims, and on May 13, 2021, they filed a joint motion for approval of their FLSA settlement agreement ("FLSA Agreement") (Doc. 33-1), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). The parties also negotiated and entered into a separate agreement and release (the "Separate Agreement") regarding the non-FLSA and shareholder disputes. (Docs. 33 at 2; 35.) The parties provided the Court with a copy of the Separate Agreement for an in-camera review pursuant to the Court's Order. (*See* Doc. 36.) The Court initially denied without prejudice the parties' first motion for approval of FLSA settlement on October 6, 2021. (Doc. 38.) The parties thereafter

filed the instant renewed Motion. (Doc. 39.)

## II.   STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department

of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers whether the settlement is fair and reasonable to the employee, the "internal" factors, and whether the settlement frustrates the purpose of the FLSA, the "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions*

*Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

### III. DISCUSSION

#### A. The Settlement Sum

According to the Agreement, Defendants have agreed to pay Plaintiff a total amount of $45,000.00, consisting of $22,500.00 in satisfaction of his FLSA wage claims and $22,500.00 in liquidated damages. (Doc. 39, Ex. A at 8.) Plaintiff originally claimed wage and overtime compensation of approximately $679,698.61, consisting of $141,666.61 owed for compensation for his role as a Consultant and $538,032.00 owed for compensation and overtime wages for his role as COO. (Doc. 18 at 3–4.) Because Plaintiff will receive less than the amount to which he claimed he was entitled under the FLSA, he has compromised his claim within the meaning of *Lynn's Food*, 679 F.2d at 1354–55.

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee … affected in the amount of their unpaid minimum wages. . . . in an additional equal amount as liquidated damages."). On review of the issues discussed by the parties in the Motion, I find the $45,000.00 Plaintiff has agreed to accept in satisfaction of his claims to be fair and reasonable in comparison to Plaintiff's original claim, considering that Plaintiff will receive wage compensation on the low end of what he originally claimed.

Both parties are represented by counsel and agree the negotiated terms of the settlement represent a fair, reasonable, and just compromise of the disputed issues, in light of the early stage of the litigation and the desire to avoid the uncertainty and expense of further litigation, detailed at length in the Motion. Moreover, while the Agreement does include a release, the release language makes clear that it is limited to those claims raised in this litigation and, as such, should not serve to make the settlement with respect to the FLSA issues unreasonable.

Thus, I recommend a finding that the settlement sum represents a fair resolution of a *bona fide* dispute between the parties and that Plaintiff has not unfairly compromised his claim.

### B. Attorney's Fees

Plaintiff's attorney will receive a total of $30,000 for fees and costs. (Doc. 39, Ex. A at 8.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . .

allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

The parties represent that this amount was negotiated separately from the amount received by Plaintiff and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 39 at 4); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (If the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### C. Release

#### i. FLSA Release

Although there is no provision in the Agreement titled "Release," the provision titled "No Other FLSA Suits or Claims," contains the following language that operates as a general release:

> By entering into this FLSA Settlement Agreement, Suhweil waives (to the maximum extent possible by law) any claims under the FLSA that he might have had against PN Medical or Carbone that arose prior to the date he executed this FLSA Settlement Agreement. The provisions of this paragraph shall not bar Suhweil from filing an action with respect to the enforcement or interpretation of this FLSA Settlement Agreement, or from participating in any action or proceeding in which he is compelled lawfully to do so pursuant to a court order or subpoena. Nothing in this FLSA Settlement Agreement is intended to prevent Suhweil from cooperating in a federal, state or local investigation.

(the "FLSA Release") (Doc. 39, Ex. A at 9.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in

exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352. Furthermore, releases given to numerous unnamed individuals, collectively referred to as "Releasees," are insufficient where the parties are not identified. *Correa v. House of Glass, Inc.*, No. 6:17-cv-676-Orl-28TBS, 2017 WL 8794847, at *4 (M.D. Fla. Oct. 19, 2017) (recommending rejection of the settlement agreement in part because the release extended to numerous unnamed individuals), *denied as moot by*, 2018 WL 1801207 (denying the R&R as moot due to the parties' subsequent filing of a renewed motion for settlement approval); *Schultz v. Tartini at Rock Springs Ridge, LLC*, No. 6:17-cv-815-Orl-37KRS, 2017 WL 11062615, at *2 (M.D. Fla. Sept. 22, 2017) (ordering the parties to file a renewed motion for settlement agreement approval in part because the motion did not address the breadth of the release given to defendants).

Judges in this District have found releases similar to the one presented here to pass judicial scrutiny because they do not require Plaintiff to release unknown claims that are unrelated to his wage claim. *Pond v. Red Lambda, Inc.*, No. 6:19-cv-1975-ORL-37EJK, 2020 WL 4808744, at *4 (M.D. Fla. Aug. 3, 2020), *report and recommendation adopted*, No. 6:19-cv-1975-ORL-37EJK, 2020 WL 4785449 (M.D. Fla. Aug. 18, 2020); *Renta v. Magnolia Towers, Inc.*, No. 6:19-cv-1202-ORL-37EJK, 2020 WL 1853639, at

\*3 (M.D. Fla. Mar. 27, 2020), *report and recommendation adopted*, No. 6:19-cv-1202-ORL-37EJK, 2020 WL 1852422 (M.D. Fla. Apr. 13, 2020). Furthermore, the parties to the Release are specifically identified. Therefore, because the Release provision releases only Plaintiff's FLSA claims against Defendants and does not seek to release other non-FLSA related claims against unnamed parties, I recommend that the Court find this release passes judicial scrutiny. *See Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted).

### D. Settlement of Non-FLSA Claims by Separate Agreement

The parties have resolved Plaintiff's non-FLSA claims by a separate, confidential agreement, which the parties submitted to the Court for an *in camera* review. (Doc. 37.) "[C]ourts have approved separating settlement of the FLSA and non-FLSA claims into separate agreements, even where the non-FLSA agreement was not submitted to the court." *Wilburn v. Paradise Lawns & Landscaping, Inc.*, No. 6:14-cv-1557-Orl-37TBS, 2015 WL 13793352, at \*2 (M.D. Fla. Feb. 13, 2015), *report and recommendation adopted*, 2015 WL 13793264 (M.D. Fla. Feb. 19, 2015). Accordingly, "the existence of a separate agreement settling . . . non-FLSA claims, with separate consideration paid, [is not] an impediment to the FLSA settlement." *Landfair v. Optimal Phone Interpreters, Inc.*, No. 6:12-cv-1747-Orl-37DAB, 2013 WL 12388629, at \*3 (M.D. Fla. June 20, 2013); *see also Yost v. Wyndham Vacation Resorts, Inc.*, No. 6:10-cv-1583-Orl-36GJK, 2012 WL 1165598, at \*3 (Mar. 26, 2012) (recommending approval of FLSA settlement agreement and finding review of separate settlement

agreement resolving state law claim and FLSA retaliation claims unnecessary), *report and recommendation adopted*, 2012 WL 1165468 (M.D. Fla. Apr. 9, 2012); *Stevenson v. RBC Bank USA, Inc.*, No. 6:10-cv-1624-Orl-28DAB, 2011 WL 4412155, at *1 (Aug. 19, 2011) (recommending approval of FLSA settlement agreement where parties had resolved "all other employment related claims, including those relating to a Charge of Discrimination pending before the EEOC" in a separate, undisclosed agreement), *report and recommendation adopted*, 2011 WL 4411777 (M.D. Fla. Sept. 22, 2011).

Here, a review of the separate agreement shows that it does not relate to or involve Plaintiff's FLSA claims. Therefore, "[b]ecause the parties settled the non-FLSA claims separately and that settlement does not appear to have affected the settlement terms of the FLSA claim, consideration of the separate settlement is unnecessary." *Harrison v. Experis US, Inc.*, No. 3:16-cv-1392-J-25PDB, 2017 WL 11113511, at *5 (M.D. Fla. Aug. 22, 2017) (citation omitted), *report and recommendation adopted*, 2017 WL 11113512 (M.D. Fla. Sept. 7, 2017).

### IV. RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the parties' Unopposed Joint Motion to Approve Settlement and Settlement Agreement (Doc. 39);
2. **FIND** that the parties' Agreement (Doc. 39, Ex. A) is a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

3. **DISMISS** the case **WITH PREJUDICE**; and

4. **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on December 9, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record